Filed 3/7/25  In re L.N. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.N., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E084751 |
| Plaintiff and Respondent, | (Super.Ct.No. DPIN2300071) |
| v. | OPINION |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Robert McLaughlin and Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Jamila T. Purnell, Deputies County Counsel, for Plaintiff and Respondent.

1

The sole claim in this juvenile dependency appeal is that the social services department did not fulfill its initial inquiry duty under California's version of the Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.) because some of the child's paternal relatives, who never spoke with the department, were not asked about possible Indian ancestry. Those relatives were never identified as ones possessing additional information about the issue, and when the child's father asserted "Navajo Blackfoot" ancestry, the department contacted three tribes, two of which said the child was not eligible for enrollment in their tribe and one of which never responded. On this record, we affirm.[1]

## I. BACKGROUND

The sole issue here is Cal-ICWA compliance, so we need not detail the circumstances leading to L.N.'s removal from her mother, defendant and appellant J.C. (mother), or mother's actions after removal. Plaintiff and respondent Riverside County Department of Public Social Services (the department) petitioned for L.N. under section 300 in April 2023, and in October 2024 the juvenile court determined that Cal-ICWA did not apply and terminated mother's parental rights to L.N. L.N.'s father, M.N. (father), was also named in the petition and had his parental rights terminated, but he has not

---

[1] Undesignated statutory references are to the Welfare & Institutions Code, and undesignated rule references are to the California Rules of Court. Also, "we use the term 'Indian' throughout to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1.) No disrespect is intended.

appealed. Mother's appeal, however, focuses solely on father's relatives, so our focus is on the department's contacts with father.

The April 2023 detention report stated that father "reported having Navajo Blackfoot Tribe Indian Ancestry. However; he denied himself or any paternal relatives being registered tribal members, ever living on a reservation/community, attending school, or receiving any benefits from a tribe available to Indians by the Federal Government." The department then sent inquiries to the Navajo Nation, Blackfeet Tribe of Montana, and Colorado River Indian Tribes. The inquiries listed the names and known dates of birth for several relatives, including father, father's mother, and father's father. The Colorado River Indian Tribes responded that, based on the information submitted, L.N. was "not eligible for enrollment" with the tribe. The Navajo Nation sent two responses, first stating that it was trying to verify L.N.'s enrollment or eligibility for enrollment and then stating it was "unable to verify" L.N.'s eligibility for tribal membership enrollment. The Blackfeet Tribe of Montana did not respond.

In its May 2023 jurisdiction/disposition report, the department stated father "reported having no known Indian ancestry." Father also submitted a form with the court in May 2023, indicating that neither he, any of his lineal ancestors, nor L.N. is or was a member of a federally recognized tribe and that neither he nor L.N. is eligible for membership in such a tribe.

Mother's appeal centers on a separate portion of the jurisdiction/disposition report, where father described his relatives. Father "reported to have four siblings, three younger

sisters and a younger brother," and he "reported to have a great relationship with his mother. He stated that she is supportive and they remain close, continuing to spend time with each other weekly. . . . He reported that his father died from cancer in 2020. [He] reported to have a good relationship with his siblings." Father's mother was also identified for potential placement, although L.N. was placed with her maternal aunt throughout the dependency. Mother has not referred us to anything in the appellate record showing that the department contacted, or received contact information for, any of these relatives.

## II.  DISCUSSION

The federal Indian Child Welfare Act (ICWA) establishes minimum standards "for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." (25 U.S.C. § 1902.) Cal-ICWA, California's counterpart to ICWA, imposes on juvenile courts and county welfare departments "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*Ibid.*) Only the initial duty is at issue here.

The initial duty applies in every dependency. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686; see former § 224.2, subd. (b).) The initial duty expands under section 224.2, subdivision (b), when a child is removed from their home. Under that provision as it read

4

at the time L.N. was removed, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," the department's obligation includes asking the "extended family members" about the child's Indian status. (former § 224.2, subd. (b).) The Judicial Council revised rule 5.481 to implement section 224.2, subdivision (b), by requiring inquiry of extended family in every case in which the department seeks to place the child. (Rule 5.481(a)(1).)[2]

Our Supreme Court recently held "that error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1136 (*Dezi C.*).) Although the Court did "not have occasion to decide what constitutes an

---

[2] L.N. was removed under a protective custody warrant. There is a split within this court as to whether a social services agency has a duty to question extended family members about potential Indian ancestry when a child is removed by warrant. (*In re Delila D.* (2023) 93 Cal.App.5th 953, 970-971, review granted September 27, 2023, S281447; *In re Robert F.* (2023) 90 Cal.App.5th 492, 504, review granted July 26, 2023, S279743.) The issue remains pending before our Supreme Court. (See *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572.) The Legislature has recently amended Cal-ICWA to provide that social services agencies have a "duty to inquire," including questioning extended family members about potential Indian ancestry, whenever a section 300 petition "may be or has been filed." (§ 224.2, subds. (a) & (b)(1); see Stats. 2024, ch. 656, § 3.) To the extent the legislation does not moot the issue, it does not matter to our disposition, as we would affirm whether or not the department had a duty to question extended family members in this case. It either satisfied the duty (as we hold) or did not have one in the first place.

adequate and proper inquiry necessary to satisfy section 224.2," it noted that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) "'"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'" (*Ibid.*) Failures "to obtain meaningful information or pursue meaningful avenues of inquiry—by, for example, . . . failing to inquire further after a parent identified an extended family member with more information about the child's potential Indian ancestry" are relevant in assessing the adequacy of initial Cal-ICWA inquiry. (*Id.* at p. 1151.)

Here, we are not reviewing a trial court's resolution of an evidentiary conflict, but the trial court's implied finding that the department's "inquiry and due diligence were 'proper and adequate.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) We thus are "not concerned with the outcome" as to the likelihood of whether the child is an Indian child. (*Id.* at p. 1144.) We do not limit our review to "[e]nforcing the requirement of an adequate inquiry only in cases in which the record affirmatively demonstrates a reason to believe the child is an Indian child." (*Id.* at p. 1147.) Instead, we must "ensur[e] that tribal heritage is acknowledged and inquired about in dependency cases." (*Id.* at p. 1148.) This requires us to engage in a searching review to protect the tribal interests that

*Dezi C.* explained are compelling and legally protected. (*Ibid*.) Yet the deferential standard means an inquiry need not be perfect to be adequate.

We find no error in the juvenile court's determination that the department's initial inquiry was adequate, which is implied in its conclusion that ICWA (and therefore Cal-ICWA) did not apply. (See *In re Dominick D.* (2022) 82 Cal.App.5th 560, 567.) Mother claims that the department's initial inquiry was inadequate because it did not ask father's siblings or mother about L.N.'s potential Indian ancestry. However, such an omission was not the kind of failure our Supreme Court identified as relevant. *Dezi C.* noted that "failing to inquire further after a parent identified an extended family member with more information about [a] child's potential Indian ancestry" affects the adequacy of an initial inquiry. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1151.) Here, father was forthcoming about his knowledge of possible Indian ancestry and never informed the department that any of these relatives had relevant information. Additionally, the department was never given contact information for any of these relatives, and Cal-ICWA "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'" (*Id.* at p. 1140.) Taken in consideration with father's ultimate denials of Indian ancestry and the department's inquiries to three tribes father initially identified, we are satisfied that the department conducted an initial inquiry "adequate to reach a reliable conclusion about the applicability of ICWA." (*Id.* at p. 1153 (conc. opn. of Kruger, J.); accord, *id.* at p. 1169 (dis. opn. of Groban, J.) ["'the focus of the court's analysis should not be on the number of individuals interviewed, but on

whether the agency's [Cal-ICWA] inquiry has yielded reliable information about a child's possible tribal affiliation'"].)  Accordingly, we find no error in the juvenile court's determination that Cal-ICWA did not apply.

### III.  DISPOSITION

The orders terminating parental rights to L.N. are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL           

J.

We concur:

McKINSTER         
         Acting P. J.

CODRINGTON        
         J.